UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
AT COVINGTON

Eastern District of Kentucky
FILED
MAY 2 5 2006
AT COVINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 2005-238

MARGARET SINGLETON                                              PLAINTIFF

VS.                          OPINION AND ORDER

JO ANNE BARNHART
COMMISSIONER OF SOCIAL SECURITY                                 DEFENDANT

This matter is before the court on the motion for summary judgment of the plaintiff (Doc. #11) and the cross-motion for summary judgment of the defendant (Doc. #12).

In reviewing the decision of the ALJ in Social Security cases, the only issue before the court is whether the decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. Even if the evidence could also support another conclusion, the decision of the ALJ must stand if the evidence could reasonably support the conclusion reached." Alexander v. Apfel, 17 Fed. Appx. 298, 2001 WL 966284 (6th Cir. 2001) (citing Buxton v. Halter, 246 F.3d 762, 772-73 (6th Cir. 2001)).

In order to qualify for disability benefits, a claimant must establish that she is disabled within the meaning of the Social

1

Security Act. 42 U.S.C. § 423(a)(1)(D). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(2)(A).

The Social Security Act requires the Commissioner to follow a five-step process when making a determination on a claim of disability. Heston v. Commissioner of Social Security, 245 F.3d 528 (6th Cir. 2001). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity." Heston v. Commissioner of Social Security, 245 F.3d 528,534 (6th Cir. 2001) (citing Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (citing 20 C.F.R. 404.1520(b)). Second, if the claimant is not engaged in substantial gainful activity, she must demonstrate she suffers from a severe impairment. Id. "A 'severe impairment' is one which 'significantly limits . . . physical or mental ability to do basic work activities.'" Id. (citing 20 C.F.R. §§404.1520(c) and 416.920(c)). Third, if claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets or equals a listed impairment at 20 C.F.R. part 404, subpart P, appendix 1, then the claimant is presumed disabled regardless of age, education or work experience. Id. (citing 20 C.F.R. §§404.1520(d) and 416.920(d)(2000)). Fourth, claimant is not disabled if her impairment(s) do not prevent her

2

from doing her past relevant work. Id. Lastly, even if the claimant cannot perform her past relevant work, she is not disabled if she can perform other work which exists in the national economy. Id. (citing Abbott, 905 F.2d at 923).

The claimant has the burden of establishing she is disabled, but the Commissioner bears the burden of establishing that the claimant can perform other work existing in the national economy.

At the time of the hearing, the claimant was 62 years old. She has a high school equivalency education, and has past relevant work experience as a cutting machine operator, film processor and film splicer. The claimant alleges disability beginning June 1, 2001 due to severe right knee pain, left hip pain and back pain. She also asserts that the side effects of her medication render her unable to function.

Dr. Holladay began treating the claimant for knee pain in June 2001. In December 2001, he performed a right knee arthroscopy. (ADM 95-97, 102). Dr. Holladay recommended physical therapy, but did not assess any limitations. (ADM 95).

The claimant began physical therapy in August 2001. After her surgery, the claimant progressed to a point that she had resumed her three-mile walks and had normal range of motion. (ADM 110, 124). She was discharged from physical therapy on July 29, 2002 with a finding that all goals were met and her stated pain level was, at worst, a 2 out of 10.

In June 2002, the claimant began seeing Dr. Patrick Kirk, an orthopedist. In May 2003, Dr. Kirk ordered an MRI, which

3

evidenced "very mild degenerative disc disease and facet disease at L4-5 and facet disease at L5-S1 with very minimal grade I spondylolisthesis of L4 on L5. No spinal stenosis nor neural foraminal narrowing." (ADM 198-99). Claimant continued to complain of pain and Dr. Kirk told her she was a candidate for a trial of epidural steroids. (ADM 193). There is no evidence, however, that the claimant underwent this therapy.

Claimant commenced treatment with Dr. Grogan, her family doctor, for hip, leg and knee pain on October 6, 2003. (ADM 215). Claimant claims that her pain continues to the present day.

In the case at bar, the ALJ determined at step one, that the claimant has not been engaged in substantial gainful activity since the alleged onset of disability. At step 2, the ALJ determined that the claimant has "pain in the right knee, right hip and low back, medication side effects, quadriceps atrophy, and borderline obesity at 63 ½ inches tall and 150 pounds." At step 3, the ALJ determined that, although the claimant has a combination of impairments that are "severe," she does not have an impairment or combination thereof that is listed in or equal to one listed at 20 C.F.R. part 404, subpart P, appendix 1.

At step 4, the ALJ called a vocational expert (VE) to testify at the hearing. The vocational expert found that based upon the restrictions outlined by the ALJ[1] that claimant could

---

[1] The ALJ found that the claimant retains the residual functional capacity to lift and/or carry up to 20 pounds occasionally and up to 10 pounds frequently; she can occasionally

4

perform her past relevant work as a film splicer - a sedentary position. The ALJ adopted the opinion of the VE. Having found that the claimant could perform her past relevant work, the ALJ found that the claimant was not disabled.

Claimant argues that the ALJ erred in not properly assessing her pain, in ignoring the side effects caused by her medication, and in not giving controlling weight to the report of her treating physician.

Pain alone, if the result of a medical impairment, may be severe enough to constitute a disability. Kirk v. Secretary of H.H.S., 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). In order to find the claimant disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by the claimant; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. Duncan v. Secretary of H.H.S., 801 F.2d 847, 852-53 (6th Cir. 1986). See also Felisky v. Bowen, 35 F.3d 1027, 1038-39 (6th Cir. 1994); Jones v. Secretary of H.H.S., 945 F.2d 1365, 1369 (6th Cir. 1991).

This test, however, "does not require . . . 'objective

---

kneel, and climb ladders, ropes or scaffolds; she can frequently crouch; she should avoid hazardous machinery and unprotected heights. Claimant has no mental limitations.

5

evidence of the pain itself.'" Duncan, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon the claimant's activities, the effect of the claimant's medications and other treatments for pain, and the recorded observations of pain by the claimant's physicians. Felisky, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports the claimant's complaints of the existence and severity of pain, the ALJ may not discredit the claimant's testimony and deny benefits. King v. Heckler, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. Felisky, 35 F.3d at 1039-41.

Claimant specifically argues that the ALJ improperly discredited her complaints of pain. A claimant's complaints of pain are subject to a credibility determination. In light of the Commissioner's opportunity to observe the claimant's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. Kirk, 667 F.2d at 538. "If

6

an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." Felisky, 35 F.3d at 1036. The ALJ's articulation of the reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." Hurst v. Sec. of H.H.S., 753 F.2d 517, 519 (6th Cir. 1985)(citing Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984)).

Here, the ALJ explained that he considered the claimant's subjective allegations of pain and found them to be not entirely credible. The ALJ stated:

> The claimant testified to constant pain in her right knee, right hip and low back. She said that it reaches 10/10 at times, which was defined as the worst pain imaginable. She said that with medication, her pain averages 5/10, at the moderate level. She also alleged disabling medication side effects. The claimant also alleged that she had been in physical therapy three times with no improvement. The above is very inconsistent with other significant evidence. The claimant testified that she could walk only 50 feet without a break. However, on February 8, 2002, only the claimant's second visit to physical therapy after the December 2001 knee surgery, the claimant was quoted as stating that she was doing real well, with no pain. (Exhibit 3F, p. 4).
>
> The claimant also was quoted as stating that she could walk 3 miles without pain. When this was pointed out, the claimant said that that was true then but not now. She was unable to explain why her situation has become worse, and there is no significant objective evidence consistent with any deterioration.
>
> The claimant's testimony that physical therapy never helped is also inconsistent with other significant evidence. The claimant's discharge from physical therapy summary on August 30, 2002 reported that all anticipated goals and expected outcomes were met. (Exhibit 4F, p.3). The claimant was able to walk 14,000 steps on the pedometer without any pain. In general, there are few, if any, clinical signs consistent with the claimant's allegations or Dr. Grogan's limitations.
>
> Also undercutting the claimant's credibility is the fact that, despite allegations of intolerable and disabling

7

>    musculoskeletal pain, the claimant has not seen any
>    specialist for treatment since she stopped seeing Dr. Kirk
>    on May 21, 2003 (Exhibit 8F, p. 4). This is despite having
>    medical insurance. One would expect a hypothetical
>    individual with the claimant's allegations to have sought
>    out better treatment with a specialist and/or pain clinic
>    rather than just going to her primary care physician. The
>    claimant said that Dr. Kirk had told her that there was
>    nothing further that he could do. However, this is
>    inconsistent with Dr. Kirk's May 21, 2003 note which shows
>    that Dr. Kirk offered a trial of epidural steroids for the
>    claimant's "clinical sciatica" (Exhibit 8F, p. 4). The
>    claimant was supposed to call back if interested but
>    apparently never did. It is unclear as to what Dr. Kirk
>    meant by "clinical sciatica" because Dr. Kirk seems to have
>    based this impression solely on the claimant's subjective
>    complaints. Certainly, there are no laboratory findings
>    consistent with sciatica.

(ADM 21).

The ALJ's finding that the claimant's testimony is not credible is entitled to deference. The court finds that the ALJ's decision that the pain alone was not severe enough to constitute a disability is supported by substantial evidence and may not be disturbed by the court.

The claimant also argues that the ALJ erred in ignoring the side effects that her medication inflicted on her in assessing her ability to work. The court finds, however, that the ALJ did consider these side effects in rendering his decision. Specifically, the ALJ listed medication side effects as one of the claimant's severe impairments. The ALJ also stated:

>    The claimant's allegations that the side effects from her
>    medications alone make her too drowsy or otherwise unable to
>    mentally and/or physically function are given no weight in
>    so far as the claimant alleged disability just based on the
>    above side effects. With that alleged degree of severity,
>    one would expect the claimant to report more than once these
>    alleged side effects to her treating sources (Exhibit 12F,
>    p. 4), of which there is no substantial evidence. Giving
>    the claimant some benefit of the doubt, it is found that

8

such side effects would preclude the claimant from working around unprotected heights and hazardous machinery.

(ADM 19).

The court finds that the ALJ gave valid reasons why he discredited claimant's claim of disabling side effects. In addition, he gave the claimant the benefit of the doubt by incorporating in his RFC finding, and hypothetical questioning to the VE, a restriction precluding the claimant from working around unprotected heights and hazardous machinery. Therefore, claimant's argument that the ALJ ignored these side effects is not well taken. To the contrary, the ALJ specifically addressed the issue in rendering his decision, and the claimant has not produced any evidence to demonstrate that the medication caused her any more limitations than those identified by the ALJ. Accordingly, the court finds that the ALJ's finding that the side effects of the medicine did not present a significant problem is supported by the record.

Plaintiff also objects to the ALJ's reliance on the report of Dr. Phillips, a consulting physician, over that of Dr. Grogan, her treating physician. The court, however, finds that the ALJ analyzed the doctors' reports in question and determined their credibility by looking at the objective medical records.

The regulations provide that a treating physician's opinion will not be given controlling weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §404.1527(d)(2). If an ALJ does not find a treating source's opinion to be entirely credible, the ALJ may

9

reject it, provided that good reasons are specified. <u>Bogle v. Sullivan</u>, 998 F.2d 342, 347-49 (6th Cir. 1993). Here, the ALJ stated:

> No weight is given to Dr. Grogan's medical source statement dated September 16, 2004 except in so far as it agrees with the above residual functional capacity assessment (Exhibit 12F, pp. 6-9). The claimant's limitations as reported by Dr. Grogan are not well supported objectively and are inconsistent with other significant evidence. Also, Dr. Grogan is the claimant's primary care physician and is not a knee, hip or back specialist. Primarily, Dr. Grogan's limitations are inconsistent with the essentially mild to moderate, mild more [than] moderate, objective clinical signs and laboratory findings. Dr. Grogan's limitations are also inconsistent with the success of the claimant's treatment.
>
> For example, Dr. Grogan's limitations are inconsistent with a lumbar spine MRI dated May 1, 2003. Dr. Grogan, in support of his limitations, mentions an abnormal lumbar spine MRI (Exhibit 12 F., p. 6). However, he does not mention that the impression was one of "very mild" degenerative disc disease and facet disease at L4-5 and L5-S1 with "very minimal" Grade I spondylolisthesis of L4 on L5. There is also neither spinal stenosis nor neural foraminal narrowing (Exhibit 8F, pp. 9-10). This MRI constitutes significant evidence inconsistent with Dr. Grogan's opinions.
>
> Another piece of significant evidence inconsistent with Dr. Grogan's medical source statement was a normal EMG of the claimant's bilateral lower extremities on May 2, 2003 (Exhibit 8F, p. 11). Dr. Grogan reports in his medical source statement that the claimant has an abnormal gait in that she walks with a limp (Exhibit 12F, p. 6). However, it is interesting to note that the only time that Dr. Grogan, or anyone else for that matter, documented an abnormal gait was on September 16, 2004, the date that Dr. Grogan filled out the medical source statement (Exhibit 14F, p. 3). The claimant had come to Dr. Grogan that day expressly to have her disability papers filled out. The claimant, clearly, had a secondary gain motivation to limp on that day. If the claimant had limped before September 16, 2004, presumably, assuming good medical practice, that would have been documented before. During a consultative physical exam on March 5, 2003, Dr. Fritzhand reported that the claimant had a normal gait (Exhibit 5F, p. 1). It is also very inconsistent with a significant limp that the claimant, as per her testimony, has never used an ambulatory aid, at

10

>least not after the December 2001 knee surgery convalescence (Exhibit 2F, p. 5), nor has either Dr. Grogan or another physician prescribed any sort of ambulatory aid.
>
>Also very inconsistent with Dr. Grogan's limitations are the relatively mild laboratory findings regarding the claimant's right knee, her primary severe impairment. After the right knee surgery in December 2001, Dr. Kirk, an orthopedic knee specialist and the claimant's treating orthopedist at the time, reported on June 24, 2002 that three views of the claimant's right knee revealed preservation of her joint space. There were no osseous abnormalities (Exhibit 8F, p. 7). Two views of the claimant's right hip revealed a normal hip (Exhibit 8F, p. 7). The claimant did have (Exhibit 8F, p. 7) and continues to have, for unknown reasons, significant quadriceps atrophy. There are no other laboratory findings regarding the claimant's knee or hip since then. For the above reasons, Dr. Grogan's medical source statement is thus, obviously, a rubber stamp of the claimant's subjective complaints that she is disabled.

(ADM 20-21).

Accordingly, the ALJ articulated clear reasons why he discredited treating physician Dr. Grogan's report: he did not find the treating physician's assessment supported by the record. Having found that Dr. Grogan's finding of severe limitations was not supported by the medical evidence, the ALJ discounted the opinion. The court finds that the ALJ stated acceptable reasons for finding Dr. Grogan's assessment less than fully credible.

The court holds that the ALJ's findings are supported by substantial evidence. Accordingly, claimant is not disabled within the meaning of The Social Security Act and the ALJ's decision is affirmed.

Therefore, the court being advised,

**IT IS ORDERED** that the motion for summary judgment of the claimant (Doc. #11) be, and it is, hereby **denied**; that the cross motion for summary judgment of the defendant (Doc. #12) be, and

11

it is, hereby **granted**; and that this matter be, and it is, hereby **dismissed** and **stricken** from the docket of this court.

This 24th day of May, 2006.

*William O. Bertelsman*
**WILLIAM O. BERTELSMAN, JUDGE**